UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ELEANOR LUCILE PAGANO,

    Plaintiff,

v.                                            Case No. 5:21-cv-600-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider the opinion of Nicholas Gehle, Psy.D. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    I.    *Background*

Plaintiff, who was born in 1970, claimed disability beginning January 1, 2018, which she later amended to May 6, 2020 (Tr. 39-40, 227-28). She was 49 years old on the amended alleged onset date. Plaintiff obtained at least a high school education, and her past relevant work experience included work as a hand packager (Tr. 52, 260). Plaintiff alleged disability due to bone spurs, a neck problem, depression, bipolar

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

disorder, schizoaffective disorder, post-traumatic stress disorder (PTSD), and chronic obstructive pulmonary disease (COPD) (Tr. 259).

Given her alleged disability, Plaintiff filed an application for SSI (Tr. 227-33). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 75-123, 129-49). Plaintiff then requested an administrative hearing (Tr. 150). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 37-55). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-25).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 6, 2020, the application date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: joint disorder of the right hand and shoulder, COPD, depressive disorder, PTSD, and anxiety/obsessive compulsive disorder (Tr. 12). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following limitations:

> [S]he could lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally. She could stand and/or walk for up to 6 hours and sit for up to 6 hours in an 8-hour workday (with normal breaks). She

>could occasionally climb ramps or stairs but not ropes, scaffolds, or ladders exceeding 6 feet. She could occasionally reach overhead but frequently reach in all other directions. She could perform occasional postural activities. She should work in an environment with no more than moderate temperatures and occasional exposure to dusts, fumes, odors, gases, or other pulmonary irritants. She could have only occasional direct contact with the public (indirect contact is permitted). She could have only occasional contact with coworkers where interaction is a job requirement, akin to a team setting. She could perform only simple unskilled work. Additionally, she has limitations in the ability to concentrate that would cause her to be off task an average of 5 percent of the workday and cause her to miss an average of one day of work each quarter.

(Tr. 14). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 15).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 18). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a laundry sorter, an office helper, and a merchandise marker (Tr. 19, 53-54). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 20). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied (Tr. 1-6, 211-13). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Standard of Review

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(i)-(iv). If the claimant cannot perform the tasks required of his

or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to

determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

  *III. Discussion*

  Plaintiff argues that the ALJ erred by failing to properly consider the opinion of Dr. Gehle, a consultative psychologist, and providing "illegitimate reasons" for discounting the opinion (Doc. 22, at 11). Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 416.920c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 416.920c(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the

6

consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 416.920c(c)(3)(i)-(v), (4) & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[2] 20 C.F.R. § 416.920c(b)(2).

    Here, Plaintiff presented to Dr. Gehle in October 2020 for a consultative psychological examination, consisting of a general clinical evaluation with mental status and a review of prior reports regarding Plaintiff's mental health treatment (Tr. 671-74). Dr. Gehle observed that Plaintiff arrived on time and, as the sole informant, maintained the ability to answer all questions presented and give specific information and dates without difficulty (Tr. 671). During the evaluation, Plaintiff displayed a positive attitude, provided positive and appropriate cooperation and effort, showed normal affect, provided reliable and accurate information, and presented with

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 416.920c(b)(3).

7

unremarkable behavioral findings (Tr. 671-72). Plaintiff reported that her current mental health conditions were remarkable for anxiety and PTSD, her mood was "alright," her present conditions were impacted by parenting and interpersonal issues, her history of mental health treatment included psychiatric and therapeutic services, counseling proved helpful, her personal trauma history was remarkable for sexual abuse as a child, and her family mental health history was remarkable for PTSD, depression, and substance abuse (Tr. 672).

Based on his observations, Dr. Gehle concluded that Plaintiff met the criteria for anxiety and PTSD, with Plaintiff's current level of mental health symptoms best characterized as severe (Tr. 672). As to anxiety, Dr. Gehle noted that Plaintiff met the following criteria: excessive worry, difficulty controlling the worry, sleep disturbances, irritability, concentration problems, and muscle tension and fatigue (Tr. 672). Plaintiff reported first experiencing those symptoms as a child but also indicated that she experienced the symptoms daily, with the symptoms typically lasting for most of the day at a moderate intensity (Tr. 672). Regarding PTSD, Dr. Gehle found that Plaintiff met the following criteria: experienced, witnessed, or was confronted with an event that involved threatened death, injury, or damage to the integrity of self or others, in which response involved fear, helplessness, and horror; recurrent distressing recollection of the event; recurrent distressing dreams; intense psychological distress at exposure to cues that symbolize the event; physiological reactivity on exposure to cues that symbolize the event; efforts to avoid thoughts, feelings, conversations, activities, places, or people associated with the trauma or that arouse recollections of

the trauma; an inability to recall important aspects of the trauma; feeling detachment from others; restricted range of affect; sense of a foreshortened future; loss of interest in activities; sleep disturbances; irritability; concentration difficulties; hypervigilance; and exaggerated startle response (Tr. 672). Like her anxiety, Plaintiff indicated that she first experienced these symptoms as a child, she experienced the symptoms daily, and the symptoms typically lasted for most of the day at a moderate to severe intensity (Tr. 672).

With respect to her daily activities, Plaintiff reported that she did not have a regular schedule of waking up or going to sleep; she characterized her sleep as poor due to nightmares; and she stated that her daily routine consisted of reading, playing on the computer, and going out with her friend (Tr. 672). Plaintiff indicated that she could bathe, dress, and toilet independently and move around without assistance but experienced difficulties completing basic household chores related to gripping, pushing, pulling, and lifting (Tr. 672-73). According to Plaintiff, she could manage money effectively, pay her bills, and complete grocery shopping independently (Tr. 673).

Upon examination, Plaintiff appeared alert and oriented to person, place, situation, and time with unremarkable rate and quality of observed speech and adequate attention and concentration, as Plaintiff could attend to Dr. Gehle's questions throughout the interview without distraction and could complete tasks of alphabetic and numeric reiteration without errors (Tr. 673). Plaintiff's mental flexibility and recent memory appeared to be mildly impaired, but she did not display

any significant difficulties in processing speed and her receptive language, expressive language, immediate memory, and remote memory all appeared to be adequate (Tr. 673). Dr. Gehle noted, however, that Plaintiff demonstrated severely impaired mental computation, as she was unable to complete basic verbal arithmetic problems (Tr. 673). Plaintiff showed adequate social skills, abstract reasoning tending toward concrete, adequate judgment related to self-care and social problem-solving, fair insight, below average overall intelligence, age-appropriate and unremarkable thought form and content, and coherent, logical, and goal-directed general thought processes (Tr. 673). Plaintiff denied any suicidal or homicidal ideations at the time of the evaluation and denied experiencing delusions both at the time of the evaluation or in the past (Tr. 673-74). While Plaintiff reported experiencing hallucinations in the past and a negative voice originating from inside her head and "nagging" her, Dr. Gehle determined that such voice was likely consistent with her internal monologue rather than psychotic in nature (Tr. 673).

To summarize, Dr. Gehle indicated that Plaintiff appeared to meet the criteria for generalized anxiety disorder and PTSD, with her overall presentation appearing valid and consistent with the reported conditions (Tr. 674). Dr. Gehle concluded that Plaintiff's mental health symptoms, based on reports and clinical observations, appeared to be severely impacting Plaintiff's activities of daily living, vocational performance, and interpersonal interactions (Tr. 674). He determined that Plaintiff's current prognosis was guarded but noted that, regarding financial management, Plaintiff could manage her benefits and financial decisions (Tr. 674).

In the decision, the ALJ discussed and considered Dr. Gehle's findings (Tr. 17, 18, 671-74). The ALJ determined that Dr. Gehle's statement about Plaintiff's mental health symptoms appearing to severely impact Plaintiff's activities of daily living, vocational performance, and interpersonal interactions did not constitute a medical opinion under the regulations (Tr. 18). In doing so, the ALJ reasoned that the statement did not address what Plaintiff could still do despite her impairments and whether Plaintiff had an impairment or related limitations and restrictions in the ability to perform work activities or to adapt to environmental limitations (Tr. 18). According to the ALJ, the statement appeared to be based, at least in part, on Plaintiff's reports and was neither supported by examination findings nor bolstered by the medical evidence of record, and, thus, the statement was less persuasive (Tr. 18). Based on his review, the ALJ concluded that the evidence supported a finding that Plaintiff retained the ability to perform simple, routine tasks with only occasional interaction while being off task up to five percent of the workday (Tr. 18).

Plaintiff contends that the ALJ's reasons for discounting the Dr. Gehle's statement – including that the statement was based, in part, on Plaintiff's reports, that the statement was not supported by the examination findings nor bolstered by the medical evidence of record, and that the statement did not constitute a medical opinion – were "illegitimate." I will turn first to whether Dr. Gehle's statements constituted a medical opinion. The regulations define a "medical opinion" as a statement from a medical source about what a claimant can still do despite his or her impairments and whether such claimant has one or more impairment-related limitations or restrictions

in the ability to perform the physical, mental, or other demands of work activities, as well as the ability to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2)(i)(A)-(D). "Other medical evidence" consists of evidence from a medical source that is not objective medical evidence (*i.e.*, medical signs, laboratory findings, or both) or a medical opinion, including judgments about the nature and severity of a claimant's impairments, the claimant's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis. 20 C.F.R. § 416.913(a)(3). As the ALJ correctly determined, Dr. Gehle's statement regarding Plaintiff's mental health symptoms appearing to severely impact Plaintiff's activities of daily living, vocational performance, and interpersonal interactions did not constitute a medical opinion under the regulations as Dr. Gehle did not provide a statement about what Plaintiff could still do despite her impairments or about the limitations and restrictions she would experience in her ability to perform the demands of work activities or to adapt to environmental conditions. Rather, the statement expressed a judgment about the nature and severity of Plaintiff's impairments, thus rendering it "other medical evidence" under the regulations. Consequently, the ALJ did not need to articulate whether he found the statement persuasive nor consider the factors outlined in 20 C.F.R. § 416.920c(c).

Even so, the ALJ found the statement less persuasive, because the statement was based, at least in part, on Plaintiff's reports and was not supported by Dr. Gehle's examination findings or bolstered by the other evidence of record (Tr. 18). As the ALJ discussed, Dr. Gehle's examination notes showed primarily unremarkable findings,

12

including Plaintiff displaying a positive attitude, providing positive and appropriate cooperation and effort, showing normal affect, providing reliable and accurate information, presenting with otherwise unremarkable behavioral findings, and showing adequate social skills, abstract reasoning tending toward concrete, adequate judgment related to self-care and social problem-solving, fair insight, age-appropriate and unremarkable thought form and content, and coherent, logical, and goal-directed general thought processes with no significant difficulties in processing speed and adequate receptive language, expressive language, immediate memory, and remote memory (Tr. 17, 18, 671-73). Further, despite Plaintiff's arguments to the contrary, the other sporadic mental health treatment records did not provide support for Dr. Gehle's statements (Tr. 359-66, 376-388). As the ALJ discussed, Plaintiff treated at the Centers in 2014 and 2015 for mood disorder, PTSD, borderline personality disorder, opiate dependence, and cannabis abuse with psychotherapy and medication (Tr. 16-17, 359-66, 376-388). During that time, Plaintiff presented for a limited number of examinations, most of which showed unremarkable findings outside of depressed, anxious, or irritable mood and auditory hallucinations with concentration problems and instead simply listed the diagnoses and the treatment plan (Tr. 359-66, 376-388).[3] The most recent mental health examination occurred in March 2016,

---

[3] As stated above, neither a diagnosis of an impairment nor a treatment plan constitutes a medical opinion. *See* 20 C.F.R. § 416.913(a)(2) & (3). "Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating that "the mere existence of these impairments does not reveal the extent to which they limit [the plaintiff's]

nearly four years before the alleged disability onset date, wherein Plaintiff showed a depressed and anxious mood but stated that, a few days prior to the examination, she ran out of her medication, which she had found effective (Tr. 384). In fact, Plaintiff testified during the administrative hearing that she had not received mental health treatment in at least five years (Tr. 15, 49-51). Accordingly, the ALJ provided substantial evidence in support of his assessment that neither Dr. Gehle's examination findings nor the other evidence of record supported Dr. Gehle's statement.[4]

Lastly, the ALJ's other stated reason for finding Dr. Gehle's statement less than persuasive – that the statement was based, in part, on Plaintiff's reports – is not "illegitimate." As Plaintiff asserts, a "psychological opinion need not be based on solely objective tests" and such "findings may rest either on observed signs and symptoms or on psychological tests." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (citations and internal quotation marks omitted). In this instance, the ALJ accurately indicated that Dr. Gehle's statement relied, at least in part, upon Plaintiff's reports to Dr. Gehle (Tr. 18, 671). Indeed, most of Dr. Gehle's report consists of

---

ability to work or undermine the ALJ's determination in that regard."). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*) (citation omitted).

[4] I am cognizant of the Eleventh Circuit's analysis in *Simon v. Commissioner of Social Security* discussing the unpredictable fluctuation of symptoms, including good days and bad days, for individuals with mental disorders and the impropriety of an ALJ's dismissal of a mental health professional's treatment notes as indicating only mild limitations because some of the mental status examinations are better than others. 7 F.4th 1094, 1106-09 (11th Cir. 2021). Upon review of the ALJ's decision and the evidence of record in this instance, I am satisfied that the ALJ fully and properly considered the medical evidence in conjunction with the other evidence describing Plaintiff's mental impairments.

Plaintiff's historical statements regarding her impairments and her subjective complaints relating to those impairments (Tr. 671-74). While acknowledging that fact, the ALJ, in the same sentence, pointed to the lack of support for Dr. Gehle's statement in Dr. Gehle's own observed signs and symptoms upon examination and the other mental health treatment notes (Tr. 18). Given the contradictory findings upon examination and set forth in the prior treatment notes, Dr. Gehle's significant reliance upon Plaintiff's reports lends itself to a finding that Dr. Gehle's statement is less persuasive. The ALJ therefore did not err in that regard.[5]

### IV. *Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

---

[5] Plaintiff's argument that the ALJ should have re-contacted Dr. Gehle for a statement regarding Plaintiff's specific functional limitations lacks merit. As Dr. Gehle's statement did not constitute a medical opinion, it was unnecessary for the ALJ to further develop the record seeking a more specific opinion. As discussed above, based on the record before him, including the statement from Dr. Gehle, the ALJ could properly determine whether Plaintiff was disabled.

DONE AND ORDERED in Tampa, Florida, on this 28th day of December, 2022.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record